UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| JACQUELINE RENEE TURNER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 19-cv-01588-RMI<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14, 25 |

Plaintiff, Jacqueline Renee Turner, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council, thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 6 & 9), and both parties have moved for summary judgment (dkts. 14 & 25). For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of

factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

In September of 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging an onset date of June 30, 2011, as to both applications. *See* Administrative Record "*AR*" at 21.[1] The ALJ denied the applications on March 30, 2018. *Id*. at 33. The Appeals Council denied Plaintiff's request for review on February 7, 2019. *See id*. at 1-3.

**SUMMARY OF THE RELEVANT EVIDENCE**

Plaintiff, now 52 years old, has suffered from depression since early childhood as a result of a combination of factors including losing her father when she was four years old, losing her brother when he was twenty years old after being ill for his entire life, and, last but not least, because she spent nearly the entirety of her life as the victim of verbal and emotional abuse, which was occasionally punctuated by also falling victim to physical abuse. *Id*. at 553, 673. Despite all this, Plaintiff had a lengthy, and largely uninterrupted work history, with her most recent position lasting for ten years between 1999 and 2010. *Id*. at 554, 675. Shortly before she became unable to work in mid-2010, Plaintiff experienced an accident during which she stepped into a pothole in an awkward manner that caused the rupture of a disc in her lumbar spine for which emergency surgery was required. *Id*. at 554, 673. Despite the surgery, Plaintiff thereafter continued to

---

[1] The *AR*, which is independently paginated, has been filed in several parts as a number of attachments to Docket Entry #13. *See* (dkts. 13-1 through 13-19).

experience "severe low back pain with sciatica." *Id*. The constant nature of her back pain operated to worsen her depression, and in July of 2010, Plaintiff was terminated from her employment for making too many mistakes on the job. *Id*. at 554. As a result, she gradually came to be overwhelmed with depressive symptoms such as feelings of worthlessness which, in her mind, tended to confirm the core messages of the childhood verbal and emotional abuse of which she had been a frequent victim. *Id*. at 554, 674.

Plaintiff's state of mental health deteriorated to such an extent that, following the communicating of her suicidal ideations to her adolescent child, Plaintiff voluntarily sought admission to a psychiatric hospital for inpatient treatment on August 2, 2010. *See id*. at 514-15. In admitting her to the John George Psychiatric Pavilion of the Alameda County Medical Center, Ryan Estevez, M.D., found that Plaintiff was a danger to herself such that psychiatric hospitalization was warranted due to her spontaneous crying, suicidal thoughts, her lack of motivation, her ruminations about death, and the increasing nature of her attempts at self-medication with cannabis (on a weekly basis) and cocaine (on a monthly basis). *Id*. at 514. Upon admission, Dr. Estevez diagnosed Plaintiff with a severe and recurrent case of major depressive disorder, as well as polysubstance abuse. *Id*. at 515. After the administration of various psychotropic medications, coupled with a period of close observation, as well as intensive psychotherapy in both individual and group settings, Plaintiff was eventually discharged several days later with instructions to continue her medicinal regimen in combination with regular psychotherapy sessions. *Id*. at 534-37.

Thereafter, for several years, Plaintiff received regular psychotherapy from her treatment providers at Lifelong Medical Care in Oakland, California, the records of which are voluminous. *See id*. at 772-1023. One thing that must be noted from these records, because it pertains to the ALJ's decision that Plaintiff's panic disorder was not "medically determinable" due to being noted (at some point) by a social worker, who the ALJ found to be a non-acceptable medical source (*see id* at 25), is the fact that in 2014, Thomas Yun, M.D., added a diagnosis of panic disorder to Plaintiff's existing and longstanding diagnoses of major depressive disorder, anxiety disorder, and ruptured lumbar disc. *See id*. at 954-56.

3

While her disability application was pending, Plaintiff was referred by the state and federal disability determination agencies for two consultative examinations by a psychologist and a psychiatrist. *Id*. at 553-57, 673-78. In October of 2011, Plaintiff underwent a psychological examination by Maria T. Holden, Psy.D., for the purpose of providing diagnostic and clinical impressions, as well as an evaluation of Plaintiff's "current level of work-related abilities from an emotional and cognitive, not medical, standpoint." *Id*. at 553, 556. To that end, Dr. Holden performed a review of Plaintiff's records, as well as a complete mental status evaluation and certain psychological testing including the Wechsler Adult Intelligence Scale – Third Edition (WAIS-III), the Wechsler Memory Scale – Fourth Edition (WMS-IV), and the Bender Visual Motor Gestalt Test – Second Edition (Bender-Gestalt II). *Id*. at 553. Initially, Dr. Holden noted that due to the "effects of depression," Plaintiff "engaged in the testing process with great difficulty." *Id*.

In the course of the mental status examination, Dr. Holden noted that Plaintiff's eye contact was poor, and that "she sobbed throughout the entire interview." *Id*. at 554. Specifically, Dr. Holden found that Plaintiff continued to experience suicidal ideations because "she feels [that] suicide might be 'easier on everybody.'" *Id*. Additionally, Dr. Holden observed that Plaintiff "showed psychomotor retardation," and that her thought process was preoccupied with her multiple sufferings. *Id*. As for her performance upon the administrations of the WAIS-III, Plaintiff's full scale IQ score was calculated as 76, which Dr. Holden concluded was indicative of "severe impairment in claimant's overall cognitive functioning." *Id*. at 555. Likewise, as to memory, Dr. Holden concluded that due to her performance on the WMS-IV, Plaintiff's scores were indicative of severe impairment in the ability to learn and recall both auditory and visual information. *Id*. Plaintiff's performance on the Bender-Gestalt-II instrument confirmed Dr. Holden's observation of psychomotor retardation and resulted in the conclusion that Plaintiff manifested "significant impairment in psychomotor speed." *Id*. The resulting diagnosis was that Plaintiff suffered from a severe and recurrent major depressive disorder, and that "[h]er symptoms are severe, cause her distress and lead to significant impairment in different areas of functioning." *Id*.

Dr. Holden then opined that, due to her conditions and the severity of her symptoms, Plaintiff experienced severe limitations in her ability to perform in the following categories of work-related activities: daily activities; maintaining social functioning; concentrating, persisting, and maintaining pace; and, withstanding emotional deterioration in work situations. *Id*. at 556. Further, Dr. Holden found Plaintiff to be moderately to severely impaired in the following categories: the ability to understand, remember, and execute simple (let alone complex) instructions; the ability to complete a normal workday or work week; the ability to respond appropriately to work situations; the ability to react appropriately to changes in a routine work setting; and, the ability to perform activities within a schedule and maintain regular attendance. *Id*. More specifically, Dr. Holden concluded that Plaintiff's impairments in cognitive functioning are exasperated by her emotional impairments in that "[d]epression, worry, and fear cause her to have slowed processing speed, to be easily derailed by thoughts and painful emotion, to be inconsistent in her responses and performance; they also impair her overall memory, cause her to forget instructions, even at times simple ones, and especially, make more complex tasks and multitasking difficult." *Id*. at 557. Thus, Dr. Holden noted that "while claimant was able to understand simple instructions[,] [she] was often taken away by the effects of depression and psychomotor retardation and she had difficulties remembering and carrying out tasks, and performed them poorly." *Id*. Accordingly, the bottom-line conclusion was that Plaitniff "is able to perform very few activities of daily living and mostly stays at home and watches TV." *Id*.

Thereafter, on May 3, 2013, Plaintiff underwent a consultative psychiatric and neurological examination by Charles DeBattista, M.D., based on a referral by the Social Security Administration. *Id*. at 673-678. At the outset, Dr. DeBattista noted that while Plaintiff's polysubstance abuse had been in remission for approximately one year, that she was (at the time) experiencing homelessness and was living in a transitional home with 14 other women. *Id*. at 674, 675. After making a series of the same observations about Plaintiff's condition that were noticed by Dr. Holden, Dr. DeBattista likewise diagnosed Plaintiff with major depressive disorder and noted that "[t]he claimant does have a history and presentation consistent with a major depressive episode. She does look impaired. The medical records support the diagnosis." *Id*. at 673-77. As to

5

functional limitations, Dr. DeBattista found that while Plaintiff is able to understand, remember, and execute "simple one or two-step job instructions," she "is not able to do detailed and complex instructions." *Id*. at 677. Further, Dr. DeBattista opined that Plaintiff was moderately to markedly impaired in the following areas: the ability to relate to and interact with others; the ability to maintain concentration, persistence, and pace; and, the ability to maintain regular attendance and perform activities on a consistent basis. *Id*. at 678. In all other aspects of functioning, Dr. DeBattista found Plaintiff to be mildly impaired. *Id*.

In October of 2016, a non-examining state agency consultant, Anna Franco, Psy.D., found that the opinions of the consultative examiners were "an overestimate of the severity of the individual's restrictions [or] limitations," and that Plaintiff was able to deal with normal and routine changes in the workplace; that she can perform simple work; that she can sustain concentration, persistence, and pace for the usual workday with the customary breaks; and, that she can interact with others without difficulty, or that she could adapt accordingly. *Id*. at 83. Thereafter, in March of 2017, another non-examining state agency consultant, Sidney Gold, M.D., similarly opined that Plaintiff's condition is not severe enough to keep her from working, that the consultative examiners' opinions are an overestimate of the severity of her restrictions or limitations, as well as noting a general agreement with Dr. Franco's assessment. *See id*. at 124, 136.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[2] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

---

[2] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ set forth the applicable law under the required five-step sequential evaluation process. *AR* at 22-23. At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *AR* at 23. At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; right knee osteoarthritis; status post meniscus tear; morbid obesity; major depressive disorder; and, anxiety disorder. *AR* at 24. The ALJ found that Plaintiff's panic disorder was not "medically determinable" because of the notion that it was diagnosed by a social worker who "is not an acceptable source for diagnosing, and the diagnosis is based solely on the claimant's self-reports of panic attacks." *Id*. at 25.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments. *AR* at 25-27. Next, the ALJ determined that Plaintiff retained the RFC to perform work at the light exertional level but involving a series of limitations such that Plaintiff would be

precluded from using ladders, ropes or scaffolds; that Plaintiff would be limited to only occasionally climbing ramps and stairs, or balancing, crawling, crouching, kneeling, or stooping; and, that she would be limited to performing simple, repetitive tasks. *Id*. at 27-31.

At Step Four, the ALJ determined that Plaintiff is unable to perform her past relevant work as a payroll clerk, collections clerk, or receptionist. *Id*. at 32. Lastly, at Step Five, based on the RFC, Plaintiff's age, education, and work experience, and (because of the ALJ's conclusion that the added limitations have "little to no effect on the occupational base of unskilled light work"), the ALJ concluded, with reference to the Medical Vocational Guidelines, that there are jobs that exist in significant numbers which Plaintiff can still perform. *Id*. at 32-33. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from June 30, 2011, through the date of the issuance of the ALJ's decision, March 30, 2018. *Id*. at 33.

## DISCUSSION

Plaintiff presents two principal arguments and submits: (1) that the ALJ erred by failing to provide legally sufficient reasons for rejecting the work-preclusive limitations that were opined by both of the examining doctors involved in this case – rendering the RFC flawed; and, (2) that the ALJ failed to account for her lengthy work history when evaluating her credibility. *See* Pl.'s Mot. (dkt. 14) at 5-22. Defendant contends that the RFC is supported by substantial evidence because the ALJ properly disregarded "the unsupported assessments" in the opinions of Drs. Holden and DeBattista. *See* Def.'s Mot. (dkt. 25) at 4-10. In justifying the ALJ's wholesale rejection of the entirety of the medical opinion evidence rendered by the only examining doctors in the record, Defendant ventures to raise discrepancies in the record that are unpersuasive and require little, if any, discussion. For example, Defendant notes that the opinions of a pair of independent examining doctors (a psychologist and a psychiatrist) are due to be ignored and disregarded because of notations elsewhere in the record that, at some time or another in the past history of her life, "Plaintiff reported that she went to church, did career testing, made friends, had a relationship, went to school, worked, took her children out, and went to a reunion." *Id*. at 8. In short, and without making any specific reference to either date ranges, or offering any sort of explanation that might assist the court in understanding such an argument, Defendant maintains that having an

8

"active lifestyle with family, friends, [and] boyfriends negate[s] the otherwise overly restrictive assessment by Drs. Holden and DeBattista's [findings] as the ALJ correctly found." *Id*. Defendant contends that the ALJ did not rely on his own opinion to make these findings, instead, he correctly gave greater weight to the non-examining state agency consultants, Drs. Franco and Gold, who had opined that Plaintiff could perform simple, routine tasks and that she could sustain adequate attention and concentration while interacting with others without difficulty. *Id*. As a result of the assertions of error presented here, Plaintiff requests an order remanding the case for a new administrative hearing. *See* Pl.'s Mot. (dkt. 14) at 1.[3]

At the outset, the court will note that the ALJ erred in the Step Two determination that Plaintiff's panic disorder was not medically determinable because of the incorrect notion that it was only diagnosed by a social worker who was not an acceptable source, and because of the equally incorrect notion that the social worker had merely parroted Plaintiff's subjective complaint in this regard. *See AR* at 25. As mentioned above, it appears that the ALJ misapprehended the record, the diagnosis of panic disorder was rendered in 2014 by Plaintiff's treating psychiatrist, Thomas Yun, M.D., and thus, it was added to the list of the other diagnostic impressions by her treating physicians, not by a social worker. *See id*. at 954-56. Accordingly, the court finds that the ALJ erred in finding Plaintiff's panic disorder to not be medically determinable for the reasons stated.

In any event, given that the ALJ rejected all of the mental-health-related limitations opined by both of the examining doctors in this case, it is undisputed that the RFC was formulated either entirely on the basis of the opinions of the non-examining consultants, or at least largely on that basis in combination with other isolated snippets of information taken from elsewhere in the record and used as justification – such as the fact that Plaintiff has reported attending church

---

[3] Because the court is already remanding the case for further proceedings, the court declines to address Plaintiff's argument regarding the ALJ's failure to account for Plaintiff's lengthy work history when evaluating her credibility. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

services at various times in her life. It should be noted at this juncture that medical opinions are "distinguished by three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The medical opinion of a claimant's treating provider is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). In cases where a treating doctor's opinion is not controlling, the opinion is weighted according to factors such as the nature and extent of the treatment relationship, as well as the consistency of the opinion with the record. 20 C.F.R. § 404.1527(c)(2)-(6); *Revels*, 874 F.3d at 654.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The] reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

In the present context, because it appears to go to the heart of the error committed by the ALJ in this case, it should not go without mention that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831 (9th Cir. 1995); *see also*

*Revels*, 874 F.3d at 654-55; *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993). Furthermore, greater weight is due to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(c)(5); *Revels*, 874 F.3d at 654.

In giving "little weight" to Dr. Holden's opinions, the ALJ merely noted that her findings are not persuasive because they are inconsistent with the fact that Dr. Holden characterized Plaintiff as "very cooperative," or that she described Plaintiff has having "clear and coherent speech," or that she observed Plaintiff to have "completed all necessary paperwork independently and was nicely dressed with 'very good' grooming and hygiene." *AR* at 31. Without mincing words, the court notes that it appears that the ALJ's search for reasons to discount Dr. Holden's opinions resulted in a scraping of the bottom of the figurative barrel, in that the court struggles to see any logical relevance whatsoever between the ALJ's stated justifications and Dr. Holden's findings as expressed in her thorough and well-reasoned report. Likewise, in similarly giving "little weight" to Dr. DeBattista's opinions, the ALJ's explanations are equally unfounded. The ALJ claimed that Dr. DeBattista's opinions as to Plaintiff's limitations were "not consistent with his exam observations" – to wit, because he also considered Plaintiff to be neatly groomed, cooperative, coherent and organized, having normal speech, and knowing the capitol of the United States. *Id*. Additionally, the ALJ further justified the discounting of Dr. DeBattista's opinions because Plaintiff "report[ed] to him that she generally got along with people, went to church weekly, and ran errands, cooked, and performed household chores." *Id*. Once again, the court will note that it is difficult to grasp the logical relevance of the ALJ's explanation here. For example, if Drs. DeBattista or Holden had opined that Plaintiff is unable to attend church, or that she has abnormal speech, or that she is unable to display good grooming, or that she cannot run errands – perhaps then the ALJ's reasoning for giving their opinions "little weight" would make more sense. In short, the court finds that the ALJ's explanations for rejecting both of these opinions in no way constituted the specific and legitimate reasoning supported by substantial evidence, as described in the case authorities cited above. Instead, the ALJ's explanations in this regard were neither

1 legitimate, nor were they supported, to any degree at all, by substantial evidence.

2 By the same token, in giving "great weight" to the unsupported opinions of Drs. Franco and Gold (the non-examining consultants), the ALJ's only explanation was a single conclusory statement to the following effect: "[t]heir opinions are consistent with evidence that the depression stabilizes with medication, and that the claimant has been able to perform a broad array of activities (e.g., going to school, working, making friends, spending time with her children, and being active in church)." *Id*. at 30. Accordingly, there remains little room for doubt that the ALJ formulated the RFC's mental-health-related components by relying entirely on the opinions of Drs. Franco and Gold. Further, because the opinions of non-examining consultants do not, by themselves, constitute substantial evidence (*see Lester*, 81 F.3d at 831 (9th Cir. 1995)), the RFC in this case was improperly formulated and was not based on substantial evidence. Instead, when the ALJ formulated a RFC that failed to account for any of the well-supported limitations opined by Drs. Holden and DeBattista, and that failure was justified only by illegitimate explanations that were based on a series of irrelevant facts (such as Plaintiff's "ability" to spend time with her family), the ALJ disregarded the key ingredient of "substantial evidence" – that is, "such *relevant* evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek*, 139 S. Ct. at 1154 (emphasis added). The court will also note that the opinions of Drs. Holden and DeBattista were consistent with and supported by the opinions of Plaintiff's treating physicians, Drs. Estevez and Yun, which the ALJ failed to even address.

Accordingly, on remand, the ALJ's Step Two finding as to Plaintiff's panic disorder is **REVERSED** because, as discussed above, that finding was based on a misapprehension of the record. Furthermore, the ALJ is **ORDERED** to give controlling weight to the common denominator of the limitations opined by Drs. Holden and DeBattista, as well as the opinions of Drs. Estevez and Yun, while fully and fairly developing the record such as to harmonize and reconcile any inconsistency between the two sets of opined limitations, because these opinions are supported by the overwhelming majority of the relevant evidence in the record.

//

//

**CONCLUSION**

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (dkt. 14) is **GRANTED**, and Defendant's Motion for Summary Judgment (dkt. 25) is **DENIED**. The case is remanded for further proceedings consistent with the instructions provided herein. Additionally, on remand, the ALJ is instructed to also consider the other issues raised in Plaintiff's briefing and to modify the opinion as appropriate. *See Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 U.S. Dist. LEXIS 40580, 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016); *Cochran v. Berryhill*, No. 3:17-cv-00334-SB, 2017 U.S. Dist. LEXIS 212380, at *21 (D. Or. Dec. 28, 2017).

**IT IS SO ORDERED.**

Dated: June 17, 2020

ROBERT M. ILLMAN
United States Magistrate Judge